Case number 14-3251, Supplemental Benefit Comm v. Navistar Inc at all. Arguments not to proceed, 15 minutes per side. Ms. Scott for the appellant, she may proceed. Good morning, your honors. My name is Sally Scott, the attorney for the defendant appellant Navistar, and I have asked to reserve 5 minutes for rebuttal. Very well. The question in this case is whether, in light of the strong presumption in favor of arbitration, the claims brought by the Supplemental Program Benefit Committee against Navistar in its amended complaint should be resolved according to the arbitration procedures set forth in the profit sharing plan or by the district court. The answer is straightforward. There's no compelling set of facts that allows this court to rule against the presumption of arbitration or infer a waiver, and so the claim should be resolved through the arbitration process. The district court found there's a valid arbitration agreement in the profit sharing plan. The SBC has not disputed that. All parties are in agreement about the valid arbitration agreement. Likewise, Judge Rice, who oversaw the original litigation, approved entry of the consent decree, properly found that the SBC's claims fell within the scope of the arbitration provision, and this court previously found that his interpretation of the consent decree is subject to deference in a Sixth Circuit opinion of Scheib v. Navistar. All doubts about the scope of an arbitration clause are to be resolved in favor of arbitration, because this court cannot say with assurance that the arbitration clause does not cover the claims, the disputes are arbitrable, and this court should so find. I want now to focus on the district court's conclusion that Navistar waived its right to arbitration, and this court should reject that conclusion because the record as it stands does not support a finding of waiver by Navistar. And as this court knows, any doubts are to be resolved in favor of arbitration. Is there a problem here simply because your client waited so long to attempt to invoke arbitration? Another way to put it is whether your opposing party incurred any prejudice from any delay that might have occurred, since I believe their argument would be that there's calculation of benefits that would have benefited their members that they couldn't have availed themselves of, because this arbitration could have proceeded much earlier. First, Your Honor, I would say that we did not delay the arbitration process. In 2009, the committee did raise that they wanted to arbitrate the Medicare Part D dispute, one very discreet issue. And at that time, we responded to them and said, we agree it's arbitrable, but it's moot. There's no point in arbitrating it, because even if you won, the dollar amounts do not trigger a profit-sharing calculation. But they didn't agree that it was moot. That was a contested issue. They never pursued it. So, and it was up to them. If they didn't think it was moot to pursue arbitration, they did not. They let it drop. Wait a minute. They sent you a letter. They sent a letter in 2010, attempting to assert their claims. What did they say? Did they mention Medicaid Part D in that 2010 letter? They did mention it in that, and we responded, and they, again, did not pursue it. Wait a minute. You say they didn't pursue it, but then there was a demand letter that was sent in November of 2011. That's not compatible with the statement that they weren't pursuing it. The November 2011 letter pursued information, not the Medicare Part D. And it was ultimately over the dispute of whether or not we had to provide information that they filed a motion to intervene and filed their original complaint, which simply sought information from us. Yeah, but that was in furtherance of their position in this whole dispute they were having with you. It's not, I mean, it's not compatible with the statement that they weren't pursuing their rights or they didn't want to have this matter determined in a timely way. I believe they are separate issues, Your Honor, because the Medicare Part D simply, the issue simply was, was that properly excluded from the profit calculation or not? The information that they sought was actually far broader than the Medicare Part D, and really actually the questions that they asked and the information they asked for was not relevant to the Medicare Part D. Well, when the committee finally attempted to intervene in March of 2012, was the Medicare Part D, was that still an issue that would have been encompassed by the litigation that they were attempting to intervene in? They did not raise Medicare Part D in their original complaint. Their original complaint sought to get information from Navistar under a different section of the profit sharing plan. It was Section 8.6. It was not part of the Medicare Part D dispute. It was simply whether or not we get information, and to that the judge ruled arbitration did not apply, that it was an information request, and so arbitration did not apply to their request for information. Let me ask you this. Was February 2013, around the time the district court approved the intervention, was that the first time that your client raised arbitration, that it wanted the matter arbitrated? We raised that we wanted that complaint, the information request, arbitrated. Yes, they had filed a motion to intervene one year prior. We opposed it under Rule 24. The judge took a year to rule on the motion to intervene, ordered them to file a complaint in compliance with Rule 24C, and once they filed the complaint, we then moved to have the dispute arbitrated. Why did you wait until 2013? The only explanation I've seen is that you wanted to ask for arbitration. The only explanation I've seen is that you wanted the matter of intervention decided before you demanded or requested arbitration. But the dispute was going on even prior to the request for intervention. Why was it that you waited until 2013? The filing to intervene under Rule 24C is not a dispute that falls under the profit sharing plan. Whether or not they were able to intervene in the case did not trigger the dispute resolution process of the profit sharing plan because it wasn't a claim under the plan. It was simply whether or not they could intervene in the case. But, Your Honor, the Medicare Part D dispute, from our perspective, was raised in 2009 and it was raised in 2010, and it was dropped until the amended complaint was filed in 2013. Wasn't the dispute a little broader than you indicated in that there was all these allegations about a committee that your client was hiding profits and creating new entities so that it wouldn't have to indicate the amount of profit sharing that they were entitled to? So the dispute was a little broader than we've been talking about here, wasn't it? Not until the amended complaint was filed in 2013. The amended complaint referred to the Medicare Part D dispute. It claims that we wrongly labeled companies as being acquired businesses so they would be treated differently in the profit sharing calculation. All those allegations of a scheme to evade it were claims raised in the first amended complaint. The original complaint sought to have Navistar produce information. And that was why the judge said it was premature to arbitrate the information request. Only after we provided the information and they reviewed it would the dispute resolution process be triggered. When did the judge say that it was premature? Because as I understand, the judge ultimately said that your client had waived arbitration by waiting too long. When the judge ruled in February of 2013 that the SPC could intervene in the case, he ordered them to file a complaint in compliance with Rule 24C. They filed their complaint and we moved to dismiss it on the grounds that it should be arbitrated. The judge denied our motion to dismiss, said that it was premature to request arbitration and that this dispute was properly before the court. It was not subject to arbitration. We didn't dispute that ruling. We provided the information they requested and then they filed their amended complaint. As soon as they filed their amended complaint, we again requested arbitration. All right. I know you're running out of time. You can go ahead with your argument. Well, I will save the rest of my time for rebuttal, Your Honor, since I have four seconds left. All right. You may proceed, Counselor. Good morning. Good morning. May it please the Court, my name is Sarah Zumwalt and I represent the Supplemental Benefit Committee. Before I begin the remarks that I've prepared, I just want to address a couple of things that Navistar's counsel has raised. First is the presumption of arbitrability. As we've noted in our briefs, this is a narrow arbitration clause and we'll talk a bit about that later, if I may. And therefore, the presumption does not apply. It can apply only to broad clauses that have... Are you disputing now the lower court's finding that it was arbitrable? Yes, Your Honor. So that's like an alternative ground for affirmance? Yes, sir. As for the issue of waiver, the committee did not drop, as Navistar suggested, the issue of the Medicare Part D subsidies. We raised it repeatedly, 2009, 2010, as you noted, and then began to realize that there was simply a minefield, a broader scheme going on, and that we needed more information and that this was going to be a major piece of litigation. And when the time came, all of those things were wrapped up together. Do you ever argue the bases that the court relied upon for ruling in your favor? I'm sorry, could you say that again? Did you argue waiver below? No, Your Honor, we did not. This is something the district court came up with all by himself. Yes, sir. Now you're defending it. Yes, Your Honor. Although I think the more compelling argument, frankly, is that this clause simply doesn't cover the disputes. So even though you're defending what the district court did, you're really sort of hitting on different focuses than the district court did. Indeed, disagreeing substantially with what the district court did. Disagreeing with the conclusion of arbitrability. Which was a considered conclusion. He didn't assume that arguendo. He found that it was arbitrable. Is that correct? That's correct, and we believe that was in error. And the reason that we believe that is that we brought Navistar into federal court because we have a dispute over the meaning of certain terms in this document that we call the Scheye Agreement. And the Scheye Agreement is an ERISA plan document, and it's a federal court order. What terms are we disputing? Well, we're going to have to figure out what the meaning of the terms qualifying profits, covered operations, and qualifying hours are. Because those are the terms that form the basis of the profit-sharing calculation. Now, these terms are not accounting terms. If we end up in front of an accountant, he can't go to his bookshelf of GAP principles, pull one down, and say, Now, what does qualifying hours mean under a Scheye Agreement? And there is no FAS bulletin that's going to tell us what those terms mean. Is there some principle of law that that's a requirement in order to have an accountant as an arbitrator? I wouldn't say a principle of law, Your Honor, but I think it's a way of interpreting the language. Is that the idea or what? Yes. My point is that it makes us call into question why parties would agree to send this type of a dispute to an accountant. So it allows us to challenge the arbitration agreement that they entered into? Is that what you're saying? No, I think it's a valid arbitration agreement, but it's far narrower than the type of issues that we've raised in this case. But I'm trying to get at why the fact that it's an accountant would lead us to that conclusion. Because I don't think it's reasonable. Why don't we have to look at the language rather than who they assigned to be an arbitrator in order to determine whether the language covers it or not? Sure. And if we look at the language, we see it refers to information and calculations. Isn't this information and calculations? No, Your Honor. We don't have a dispute, or as far as we know, we don't have a dispute about how the calculations were made once they determined what should be included in qualifying hours, qualifying profits, covered operations. I thought the idea was they were taking profits from one profit center and creating another profit center and then attributing the profits to that other profit center and that that was done in order to reduce the number that would benefit your party. Why isn't that an accounting issue? Or why isn't that an information in whatever the language is? Calculations. Calculation. That sounds like exactly a calculation. That's one of our allegations. But I think the question that has to be resolved first is, is that within the intent of the parties that formed the Shai Agreement? But we look at the language to see if it is and if it's within the language, why isn't it within the agreement? Especially if there's a presumption. When we look at the language, we see calculations and information. And I think the tools that... If they're playing with the calculations by creating different entities and attributing profit to different entities, which I take it is kind of the core of your complaint. It sounds exactly like that. It sounds like what it would be that you were trying to get arbitrated. I disagree, Your Honor, and I think it's helpful if we take a look at a couple of cases that draw this type of distinction. And one is this Court's prior decision in JPD v. Cronamed. And it's sort of a counterexample to our case. And there, it was a situation where there was a sale of a business for a certain price, and then if the business earned a certain amount of profits in the following year or so afterwards, there would be an additional payment. And the arbitration clause there said that they would arbitrate disputes over calculations of earnings and all issues bearing on such dispute. And this Court said... And the party there made the same type of argument we're saying. This is... We're not disputing calculations. We're disputing something behind that that the defendant or the company has done that's affected the outcome. And this Court said we would find that argument convincing except for that extra language and all issues bearing on such dispute. And the Court said that extra language is pivotal. Well, that pivotal language doesn't exist. That case only provides sort of by negative inference support for your position. Is that correct? That one is for negative inference, and I'd refer also to the First Circuit's case in FITTECH, which is a situation... We have cases like Pure Works and Brat Enterprises that go in the other direction. Is that correct? Allowing accountants to decide issues that you would call substantive? There are situations where accountants have decided issues. I think... Where this Court has decided that arbitration that is put in an accountant, assigned to an accountant... Sure, and we're not saying that there are no issues that we would think appropriate for an accountant to hear. You know, when you look at this... This piece of paper is what we get from Navistar each year. It's one piece of paper that tells us what the profit-sharing contribution is going to be, and it lists out the entities and a number. And then it talks about some additions back into the interim report, taxes, this kind of thing. I'm not saying you're not right on the merits. You probably have... For all I know, you have a terrifically strong claim that this agreement was violated. But the issue here is who should be deciding that, right? Right. If there's an arbitration agreement which says you've got to go through this procedure and have an accountant decide it, you could be very right. You just have to run it through that arbitration procedure, right? Right. And my point is there's plenty that we would agree that an accountant should decide that goes into what calculations are. This is a company... So even though the agreement doesn't say it's only calculations, an arbitration can only give an accountant a calculation kind of... It does say calculation and information. Information of what? And we don't believe the information reference is that broad. It refers to the sections prior that allow the Supplemental Benefit Committee to ask for additional information. And that's why the district court appropriately said when we made our information request that didn't trigger it because we aren't disputing the information that we got. What they handed us may well be true. We don't disagree with that. We're saying they've made operational choices behind the scenes, which may be no accounting violation at all or no trouble with any sort of accounting principle, but that aren't in the spirit in the letter of this shy agreement that's a federal court order. I think it's helpful, too, to look at the issue of... Isn't what accounting does is follow the flow of money? Yes. And isn't that really what you're arguing about? It is to some extent, but what we need to know first is whether it is appropriate for Navistar to cause the money to flow in those places. But at least they follow the flow and can tell you where it's gone, why it's gone, and how it's gone, and that would give you the information you need, would it not? I think an accountant could get us partway there and tell us how it flowed, but whether those manipulations were within what the parties that agreed to this shy agreement intended, I think that's for a federal court to decide, and I think one example of that is our claim about qualifying hours. But isn't that what an accountant does, too, as well as a lawyer? I mean, it's not just... I mean, you know, when they do tax work and things like that, they're following how the money goes and whether or not that's a proper tax deduction or whether putting it in another corporation is proper. Those are legal matters that the accountant does through the flow of money. They do, and they're determining whether those issues... whether those are proper under accounting standards. Here we need to figure out whether what they've done is proper under this federal court order, and that's why we think a federal judge is the appropriate person to make that determination. And I think... I'm confused. I thought it was... Go ahead. I'm sorry. Please go ahead. If they determine whether it's proper or improper, how's a court going to say it's improper if they say it's proper under accounting circumstances? What would spring, then, the court to say that's incorrect? Because the S.H.I.E. agreement doesn't just require that we follow some exterior set of accounting rules. You keep using the accounting rules, but that goes specifically to a profit and loss statement or balance sheet. But before you get to that, audits and things like that are done on the basis of what you're talking about, I think, the flow of money. Right, and I think, as you suggest, before we get to that, it's sort of a two-step process. And what we are seeking is for the federal court to interpret the S.H.I.E. agreement, tell us what covered operations means, tell us what qualifying hours means, tell us what qualifying profits mean, and then once we know what those things mean and the court has told us, it's our assumption that Navistar would go back and perform its calculations under that set of guidelines. Are there definitions of those terms within the agreement? There are. There are, and they are not simple. Accountants aren't necessarily simple. Accountants might think lawyers are simple, but I'm not. Sure, that's not my implication. But what I'm suggesting is that those terms, it's not simply a matter of, as you know, contract interpretation can be complicated, and we're bringing it before the federal judge because he's the one who can use all those tools that we normally use to interpret a contract and tell us what it means. And I think, if you look particularly at our dispute regarding qualifying hours, the language in the S.H.I.E. agreement tells us that qualifying hours are the hours worked by employees who are covered by such plans as the annual incentive plan, the used truck commission sales program, the regional management incentive plan, or other similar incentive or bonus plans, but excluding gain-sharing plans of the type in effect at the Indianapolis engine plant. So if we go to an accountant, we'd be calling up one of the top accounting firms and saying, can you send us an accountant to tell us what qualifying hours means in this federal court order and decide whether these employees have a bonus plan that's like these ones listed here, but not like the one at the Indianapolis engine plant. That's the task that we have here, and it's not, I think that has to raise a question of, really the party's intended that this dispute would go before an accountant, and I respectfully suggest that it does not. Just a quick note on waiver as I see my time is almost up. I did want to note that when we filed the motion to intervene, we filed just a couple days later, maybe a week later, a motion to enforce the settlement agreement to get the information we needed. Eventually when we were ordered to file a complaint, it was the same allegations as in the motion to enforce. We converted it into a complaint. So during that entire year where we were waiting for the district court's ruling, Navistar was aware of what was going to be in that complaint that we filed. I know you're out of time, but just one last question here. What prejudice, if any, did your client experience from the delay and the filing of the arbitration demand by Navistar? We were prejudiced in that we have a trust fund for which we're fiduciaries, and it's our job to spend that trust fund to offset the amounts that the retirees pay for their health benefits under the main plan, so we're supplemental. And each year the committee is required to look at the amount of money they have in their trust fund, all of their actuarial projections, and the benefit costs that the company says the main plan is going to cost, and to decide how much they are able to offset that cost for the participants. And obviously that's based on how much money is in the trust, and Navistar suggests that because we hadn't spent up all the money in the trust, we couldn't be harmed. Well, we have to make that determination every year and try to project it out in the future to have enough money to offset the benefit costs for the retirees. And so because we have not been able to proceed with the litigation to get the damages back that were owed, the contributions that should have been made, meanwhile retirees are paying more than they should and presumably dying off having paid more than they should. All right. Thank you. Thank you. Would you hire an accountant to make those determinations? Your Honors, first, if I may, I would like to address the issue of prejudice on waiver, and then I'll go to the scope of the arbitration clause. In 2009, as I said before, the only issue raised was the Medicare Part D dispute. The issues relating to whether we properly treated businesses as acquired businesses, as covered operations, all of that was not at issue in 2009. There is no waiver issue related to those issues or those disputes. I would also note that when the courts look at prejudice resulting from delay, the prejudice that's referred to, for example, in Johnson Associates, is that the parties underwent litigation including multiple uses of a settlement judge, discovery, production of documents, summary, judgment, those sorts of things. No litigation activity has happened in this case other than briefings on the motions in the complaint. There's been no discovery or none of those other indicia of prejudice that the court found in other cases. I also want to address, though, the scope of the arbitration clause because I think this case falls squarely within JDP and Pure Works prior decisions by this court. As Ms. Umwalt noted, the JDP case had a phrase about all issues having a bearing on such dispute, and based on that, this court found that disputes over the underlying calculations appropriately fell within the scope of the arbitration clause. In our case, the profit sharing plan arbitration provision states it applies to disputes over the information or calculations in under three sections, 8.1, 8.2, and 8.3. And when you go to 8.1, it requires Navistar to provide a worksheet detailing the calculation of the contribution obligations, the qualifying hours, and the qualifying profits. It also has a catch-all phrase that's very similar to the catch-all phrase in the JDP case. All information reasonably necessary to review the calculation of qualifying profits. Everything that counsel spoke about in terms of what they're claiming Navistar did, that we wrongly called something an acquired business when it wasn't, or how we treated it, all goes to the information necessary to review how we calculated our profits. So just like in JDP and just like in Pure Works, this dispute does fall within the scope of the arbitration clause. And certainly, frankly, I'll even give that the SBC's interpretation may be a reasonable one, but as this court knows full well, that's not the question. It's not whether theirs is reasonable and ours is reasonable. It's if there's a set of facts that allow for our interpretation of the agreement that this falls under the arbitration clause, then in that situation, arbitration is to be ordered, and we believe that's the situation here in this case. I would also note that our arbitration provision does not require that we use an accounting firm. It first gives the parties the choice of selecting an arbitrator, and if we're able to select one, we do so. We go to an accounting firm if we're not able to agree on one. That was the agreement that the parties made back in 1993 when we entered into this decree, and we believe that that is appropriate and should be what this court finds. Unless this court has other questions for me? Apparently not. All right. Thank you. Thank you. Case is submitted, and when you're ready, you may call the next case.